IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIVIAN T.,[1] for the estate of Robert T., | ) ) ) |
| Plaintiff, | ) No. 19 C 2600 ) |
| v. | ) Magistrate Judge Beth W. Jantz ) |
| ANDREW SAUL, Commissioner of Social Security,[2] | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment, [dkt. 15, Pl.'s Mot.], is denied, and the Commissioner's cross-motion for summary judgment, [dkt. 20, Def.'s Mot.], is granted.

---

[1] Robert T., the claimant, died prior to the filing of this case; his claim for benefits is continued by Vivian T., his wife, who is the plaintiff in this action. [Dkt. 21, Def's Mem., at 1 n.1.] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to them by first name and the first initial of their last name. Additionally, for ease of reference, the Court uses "Plaintiff" and male pronouns throughout this Order to refer to both the claimant and his wife.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been substituted for his predecessor.

## BACKGROUND

**I.      Procedural History**

On April 29, 2016, Plaintiff filed a claim for DIB, alleging disability since January 1, 2007, due to chronic obstructive pulmonary disease ("COPD"), congestive heart failure, emphysema, high blood pressure, high cholesterol, peripheral artery disease, coronary artery disease, a bad knee, type 2 diabetes, and diverticulitis.  [R. 62.]  Plaintiff's date last insured was September 30, 2012.  [R. 63.]  Plaintiff's claim was denied initially and upon reconsideration.  [R. 18, 77, 86.]  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 19, 2018.  [R. 30, 87–88.]  Plaintiff personally appeared and testified at the hearing and was represented by counsel; during the hearing, Plaintiff amended his alleged onset date to February 1, 2010.  [R. 30–60, 172.]  Vocational expert ("VE") Monica Dabrowiecka also testified.  [R. 52–57.]  On August 29, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act.  [R. 18–25.]  The Social Security Administration Appeals Council then denied Plaintiff's request for review.  [R. 1–6.]

**II.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process.  [R. 18–25.]  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of February 1, 2010, through his date last insured of September 30, 2012.  [R. 20.]  At step two, the ALJ concluded that Plaintiff's COPD and valvular heart disease were severe impairments.  [R. 20–21.]  The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing").  [R. 21–22.]  Before step four, the ALJ

determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work but that he "could have no more than occasional exposure to concentrated levels of fumes, odors, dusts, gases, or poor ventilation." [R. 22–24.] At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. [R. 24.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could have performed jobs existing in significant numbers in the national economy, leading to a finding that he was not disabled under the Social Security Act at any time from February 1, 2010, the amended alleged onset date, though September 30, 2012, the date last insured.[3] [R. 24–25.]

## DISCUSSION

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the

---

[3] Because Plaintiff had not worked for several years and, as a result, had exhausted his earned "quarters of coverage," he was not eligible for DIB beyond his date last insured, and thus he needed to establish that he was disabled on or before that date in order to obtain benefits. *See Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) (internal quotation marks omitted); 42 U.S.C. § 423(c).

3

claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is

4

not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ committed reversible error by (1) failing to adequately explain her RFC determination, and (2) improperly evaluating Plaintiff's subjective statements about his symptoms. For the reasons that follow, this Court disagrees with Plaintiff's arguments.

**A. The ALJ's RFC determination was supported by substantial evidence.**

Plaintiff argues that the ALJ erred by not sufficiently discussing the objective medical and other evidence in the record and explaining how those determinations supported the RFC of medium work. [Dkt. 16, Pl.'s Mem., at 3–7.] In particular, Plaintiff criticizes the ALJ for not explaining (1) how the examination results from a February 2010 hospital visit supported a finding that he could perform medium work (specifically lifting 50 pounds occasionally, 25 pounds frequently, and standing or walking for 6 hours in an 8-hour workday, *see* SSR 83-10, 1983 WL 31251, at *6), and (2) how Plaintiff's COPD impacted the RFC finding aside from the limitation on exposure to pulmonary irritants. [Dkt. 16 at 3–4.] The Court finds, however, that the ALJ adequately addressed the limited evidence Plaintiff presented in determining that

5

Plaintiff could perform medium work with no more than occasional exposure to pulmonary irritants.

Plaintiff submitted scant medical evidence concerning the relevant time period—between February 1, 2010, the amended alleged onset date, and September 30, 2012, the date last insured—including only one treatment record from that time, detailing a February 2010 emergency room admission. *See* [R. 1330–83.] The ALJ nevertheless discussed that record in detail, noting that Plaintiff, who had "a history of myocardial infarction with stent placement, presented to the hospital with complaints of sudden onset palpitations and chest pain" but denied any cough or shortness of breath or weakness in his extremities. [R. 23, 1338.] Plaintiff was ruled out for acute coronary syndrome, a stress test showed no signs of myocardial ischemia but did reveal an ejection fraction of 41%, and an electrocardiogram was within normal limits with some indication of mild to moderate regurgitation. [R. 23, 1338, 1341–46.] Additionally, on physical examination, Plaintiff was not in any acute distress, he had normal strength and sensation, his lungs were clear to auscultation and percussion bilaterally, and he had no signs of clubbing, cyanosis, or edema in his lower extremities. [R. 23, 1338.] Aside from that record, the ALJ did acknowledge that other records generally indicated that Plaintiff had been diagnosed with and was being treated for COPD during this time period, including that he used an Albuterol inhaler. [R. 23, 1330, 1374.]

The medical opinion evidence was similarly limited. The ALJ noted that the State Agency medical consultant concluded that there was insufficient evidence to assess Plaintiff's claim and had not reviewed the relevant records that were subsequently submitted by Plaintiff. [R. 23.] And the ALJ gave "very little weight" to the only medical source statement in the record—a May 2016 assessment from Dr. Martin Tobir—in part because the statement was

6

given years after the relevant time period, Dr. Tobir had examined Plaintiff only on one previous occasion (and it was unclear when that examination took place), and Dr. Tobir did not provide any clinical support from the relevant period for his opinion or explain why his assessment should apply to that period. [R.23, 364–70.] Further, Dr. Tobir alluded to shortness of breath as Plaintiff's primary symptom, but in the medical record from February 2010, Plaintiff denied shortness of breath. [R. 23, 1338.]

The ALJ also specifically considered Plaintiff's cardiac history, including the prior stent placement and his reduced ejection fraction present in February 2010, and concluded that these impairments were consistent with an ability to perform medium work. [R. 23.] Because of the lack of treatment records from the relevant time period concerning Plaintiff's pulmonary impairments—aside from the reported use of an inhaler and the COPD treatment—and the reports of no chest pain or shortness of breath and normal physical exam during his February 2010 hospital visit, the ALJ concluded that no additional limitations were warranted, other than no more than occasional exposure to pulmonary irritants. [R. 23, 1374.]

The ALJ sufficiently articulated her reasons for the RFC. She reviewed the relevant medical evidence—including the objective findings that documented Plaintiff's cardiac issue, the normal physical examination findings, and the lack of records documenting the extent of Plaintiff's pulmonary limitations. [R. 23.] She then assessed the limited opinion evidence, finding Dr. Tobir's opinion deserved "very little weight" largely because it did not address what Plaintiff's limitations would have been during the relevant time period. [R. 23–24.] And, as discussed in section B below, the ALJ also analyzed Plaintiff's subjective statements about his symptoms and properly explained why she did not find them entirely consistent with the record. [R. 23.] The ALJ appropriately tied the evidence to the formulated RFC and clearly articulated

7

her reasoning: Plaintiff's cardiac condition, as documented, warranted limiting him to medium work, and Plaintiff's claimed pulmonary impairment, given the lack of objective findings, required only a limitation of no more than occasional exposure to pulmonary irritants.

Plaintiff nonetheless argues that remand is required because the ALJ erred in allowing an "evidentiary deficit" in the record by rejecting the medical opinions and not fully crediting Plaintiff's subjective reports regarding his symptoms, and that the ALJ improperly interpreted the medical evidence on her own without obtaining a medical expert. [Dkt. 16 at 5–6.] This argument, however, is unpersuasive.

It was Plaintiff's burden, not the ALJ's, to prove that he was disabled. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); 20 C.F.R. § 404.1512(a)(1). "The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Eichstadt v.* Astrue, 534 F.3d 663, 668 (7th Cir. 2008).

Here, Plaintiff was represented by counsel, who indicated that all relevant evidence had been submitted. [R. 32.] Even now, although Plaintiff generally argues that the ALJ should have obtained further medical opinion evidence, Plaintiff has not demonstrated, through additional records or otherwise, any prejudice that resulted from that failure. *See Summers*, 864 F.3d at 527 ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.") (internal quotation marks and citation omitted); *cf. Nelms v. Astrue*, 553 F.3d 1093, 1098–99 (7th Cir. 2009) (remanding for ALJ's failure to develop record where plaintiff demonstrated prejudice by submitting additional records on appeal).

8

Further, to the extent Plaintiff argues that the ALJ improperly interpreted the medical evidence, he is incorrect. Although the ALJ must consider the medical opinions in the record, the ALJ has the final responsibility for determining Plaintiff's RFC. *See* 20 C.F.R. § 404.1527(d); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[D]etermination of a claimant's RFC is a matter for the ALJ alone—not the treating or examining physician—to decide."). Significantly, this is not a case in which the ALJ interpreted "new and potentially decisive medical evidence" without the aid of a doctor's opinion. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)) (remanding where the ALJ interpreted a new MRI without assistance of a medical expert); *Pepper v. Colvin*, 712 F.3d 351, 366–67 (7th Cir. 2013) (rejecting argument that ALJ improperly analyzed medical evidence); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (finding no error where ALJ drew a conclusion from MRI and did not substitute her own opinion). Rather, the ALJ addressed the May 2016 opinion of Dr. Tobir and explained why she gave it "very little weight" before she formulated the RFC, based largely on the attenuated time of treatment as opposed to the ALJ's own medical analysis. [R. 23.] The ALJ then appropriately considered the other record evidence—which did not include interpreting any new evidence or substituting her own opinion about the objective tests—before determining that Plaintiff's cardiac issues would limit him to an RFC of medium work and his pulmonary impairment warranted a limitation of no more than occasional exposure to pulmonary irritants.[4] Accordingly, the Court finds that the

---

[4] Plaintiff references a chest x-ray (which showed a large hiatal hernia) in faulting the ALJ for interpreting "raw medical data," [dkt. 16 at 5], but the ALJ adequately pointed out that the hernia was a non-severe impairment that did not warrant any limitations because the medical record itself did not identify any physical problems or limitations that were associated with it. [R. 21, 1330.]

9

ALJ built a "logical bridge" to her determination, which is supported by substantial evidence. *Beardsley*, 758 F.3d at 837.

**B. The ALJ's subjective symptom evaluation was not "patently wrong."**

Next, Plaintiff argues that the ALJ improperly discounted his subjective symptom statements. [Dkt. 16 at 7–11.] Plaintiff attacks the ALJ's analysis of his reports regarding his symptoms as lacking in four respects: the ALJ did not adequately consider (1) favorable objective medical evidence; (2) Plaintiff's treatment history; (3) Plaintiff's reported activities of daily living; and (4) Plaintiff's good work history. [Id.] The Court will overturn the ALJ's evaluation of Plaintiff's subjective statements about his symptoms only if it was "patently wrong." *Summers*, 864 F.3d at 528. The ALJ must support her analysis with "specific reasons supported by the record." *Pepper*, 712 F.3d at 367; *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Here, because the ALJ sufficiently explained her reasoning behind determining that Plaintiff's subjective symptom statements were not entirely consistent with the record, the decision was not "patently wrong." *Summers*, 864 F.3d at 528.

The ALJ explained in detail what she considered in concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." [R. 22.] Specifically, the ALJ found that Plaintiff's reports that he experienced "chest tightness and shortness of breath with strenuous activity and that he had significant physical limitations"— he could only lift 25 pounds, stand 15 minutes at a time, walk 45 feet, and he needed to get up and stretch 3-4 times a day if sitting, [R. 22, 51–52]—were inconsistent with hospital medical records in which he reported no shortness of breath or chest pain and had a normal physical

examination. [R. 23, 1338.] Further, the ALJ acknowledged Plaintiff's COPD diagnosis and use of an inhaler but discounted his reports about his breathing limitations on the basis that there were no pulmonary function tests or treatment records from the relevant time period, including any treatment for dyspnea (shortness of breath) with exertion. [R. 23.]

Plaintiff criticizes the ALJ for relying on the normal physical examination in February 2010 and contends that the ALJ did not discuss favorable clinical findings, including an x-ray, echocardiogram, and stress test. [Dkt. 16 at 7–8.] But Plaintiff's argument misses that the ALJ did review the February 2010 records and specifically acknowledged the results of the stress test showing a 41% ejection fraction. [R. 23.] Rather than ignore the objective findings, the ALJ relied on them, along with the physical examination, in concluding that Plaintiff's statements about his symptoms were not entirely consistent with the record.

Additionally, Plaintiff contends that the ALJ ignored the objective evidence of his breathing limitations, namely the prescription for an inhaler. [Dkt. 22, Pl.'s Reply, at 3–4.] This is incorrect as the ALJ did acknowledge Plaintiff's use of an inhaler but focused on the lack of objective tests establishing the severity of pulmonary limitations and the lack of treatment for shortness of breath during the relevant time period, concluding that the absence of those records rendered Plaintiff's allegations about his breathing limitations not entirely consistent with the record. [R. 23.]

Second, Plaintiff asserts that the ALJ erred by not recognizing Plaintiff's "persistent attempts to seek further treatment," noting that he had a stent implanted in 2000 and an angioplasty performed in 2010, he was hospitalized, and he had a variety of medications, all as evidence that his symptoms were "'intense and persistent.'" [Dkt. 16 at 9 (quoting SSR 16-3p).] But the ALJ did not overlook this prior treatment; she acknowledged Plaintiff's longitudinal

treatment history for his heart. [R. 23.] The ALJ, however, appropriately discounted Plaintiff's complaints in part because of his lack of attempts to get treatment *during the relevant time period* in finding Plaintiff's statements about his symptoms not entirely consistent with the objective medical evidence. [R. 23.] That was proper because the ALJ gave Plaintiff an opportunity to explain his lack of treatment, and Plaintiff did not testify that he was prevented from seeking needed care, *see* [R. 51]. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[I]nfrequent treatment . . . can support an adverse [ ] finding where [Plaintiff] does not have a good reason for the failure or infrequency of treatment," but the ALJ must first explore Plaintiff's "explanations as to the lack of medical care.").

Third, Plaintiff contends that the ALJ gave short shrift to his testimony regarding his activities of daily living. [Dkt. 16 at 9–10.] Specifically, Plaintiff says the ALJ did not evaluate his testimony that he could shovel snow only with frequent breaks, his wife performed the household chores, he did laundry sparingly and cooked only if his wife was not home, he had trouble sleeping, and he had to use a wheelchair to travel long distances. [Dkt. 16 at 10.] This argument ignores that Plaintiff testified in 2018 and much of his testimony was equivocal or not related to the relevant time period: Plaintiff testified that he first began using a wheelchair in 2017, his trouble sleeping was between 2007 and 2011 while he was on antidepressants (but the medication list contradicted that he was taking an antidepressant at that time), and there was no particular reason why he performed so few household chores. [R. 38, 43–46.] The ALJ did address Plaintiff's assertion that he could shovel snow but needed to take frequent breaks, and ultimately concluded that his testimony was not entirely consistent with the limited medical evidence because no evidence established that he had shortness of breath or chest pain with exertion. [R. 22–23; 43–44.] Thus, the ALJ sufficiently addressed the temporally relevant

testimony about Plaintiff's activities of daily living when assessing Plaintiff's subjective symptom statements.

Lastly, Plaintiff faults the ALJ for not discussing his "good work history" while evaluating Plaintiff's subjective statements. [Dkt. 16 at 8–9.] This argument fails, however, because "work history is just one factor among many and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *see Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). The ALJ failing to explicitly discuss this factor is not enough to negate the substantial evidence that supports her evaluation of Plaintiff's subjective statements concerning his symptoms. *Summers*, 864 F.3d at 528–29.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 15] is denied, and the Commissioner's motion for summary judgment [dkt. 20] is granted. The Court affirms the Commissioner's final decision.

SO ORDERED.

Date: June 21, 2021

BETH W. JANTZ
United States Magistrate Judge